2 minutes on rebuttal, is that correct? Yes, Your Honor. May it please the Court, nothing in Section 1103G of the Immigration and Nationality Act or Section 545D1 of the Immigration Act of 1990 permits the agency to create procedural rules of jurisdictional effect. There's no clear statement in those statutes to permit that. In fact, the regulation itself as written does not even contain a clear statement that it itself would perform its duties as a jurisdictional rule. As the Supreme Court has stated, jurisdictional rules discuss the authority of the courts, it's not the rights or the obligations of the parties. The way the departure bar is written states that the movement shall file the motion unless they have departed. It's an obligation on the party to file their motion before they have departed from the United States. That way it does not act on the authority of the board or the immigration judge. It's not a jurisdictional rule. And absent from the government's briefing is any attempt to find or indicate where the clear statement of jurisdictionality is in the regulation. What do we do about Zhang in this case? Specifically, I don't think the court needs to overrule Zhang. In it, the court stated that the manner in which the AG has chosen to define the board's jurisdiction, whether or not it conflicts with the INA was not addressed in that case. So what we're arguing here is that the INA itself and IMAC 90 do not allow the board or the AG to create jurisdictional rules. Now the AG, when they wrote the rule, did not state it in jurisdictional terms. It's the board trying to inject the jurisdictional effect into there. So our principal claim is that the statutes do not even allow that to occur for the board. Additionally, in Zhang, the claim that was made by the petitioner there was that there was a conflict between the departure bar regulation and the board's general sua sponte powers. That was the issue, in the words of Judge Friendly, that was the issue. So I understand the court dug deeper and it did a very thorough analysis and it started looking to the Seventh Circuit precedent on this and disagreed with it. But that was not presented by the parties to the case. So I believe that it could be considered dicta, separate and apart from our principal claim that the statutory argument was left open on the table. And if the court disagrees with both those points, I would say that after Kaiser, the rationale that was employed was that a flawed agency decision that the court described as being flawed should be deferred to if it was merely not plainly erroneous. Under Kaiser, that's not the test anymore. The court has to apply all the rules of construction thoroughly. And one of them that the Supreme Court has developed since Zhang is that there must be a clear statement. And the court, the Supreme Court has kept the clear statement or there must be not genuinely ambiguous, right? There's a difference. No, it's a clear. Tell me why there's no difference. No, the Supreme Court's rules for interpreting whether or not a rule is jurisdictional or a non-jurisdictional claims processing rule relies on a clear statement rule. And in ADIPO, it cited Gonzalez v. Thaler from 2012. In United States v. Kwai from Wong from 2015, both that post-state the Zhang case from this court. And in ADIPO, the court relied on those to require a clear statement for the BIA's 30-day appeal deadline, which comes from Section 545D2 of IMAC 90. So the rule we're dealing with here, the regulation in this case and the regulation from ADIPO were both developed by instructions of Congress in the same statute. But not only that, the same section, the same subsection, it was subsection D and then paragraph 1 and then paragraph 2. And the court in ADIPO stated there was nothing in IMAC 90 that suggested that the board could create it as a jurisdictional rule. So that's another issue. The court's reasoning in ADIPO isn't consistent with what happened in Zhang, but Zhang was just our deference. And it was one of the, I mean, it was a plainly erroneous test. And in Kaiser, the court said, we need to be careful about that because in the Supreme Court's words, some courts were deferring reflexively. And I'm not saying that this court did that, but the way that Zhang was written, there were serious doubts. It was not, right? I mean, there was actually text in Zhang that said, we're not operating from a blank slate. We do have the amount of deference we need to do. There is Armandadas Mendez, right? I mean, it... Well, the blank slate... Wouldn't you... Well, I thought your argument was going to be, they felt like they needed to, or that panel felt like it needed to defer. In Zhang, that statement about the blank slate was the court saying it might rule differently if it was on a blank slate. But the problem was that the board issued a precedential decision in matter of Armandadas. And because the way our deference was being applied in that time, the court had to follow it, even if it had doubts, because it was not plainly erroneous. And there was support in the regulatory history for the board's decision. But under the Supreme Court's cases nowadays, that's not the test. You have to look for a clear statement in the text. And not only that, the only time where historical precedent will make a rule to continue be jurisdictional is when it's a long line of Supreme Court precedent saying that it's jurisdictional without Congress stepping in. That's not this case. This is about regulatory practice and looking to an era where, as the Supreme Court states, where tribunals were using the word jurisdictional not as disciplined as the court would like to do these days. There's another point about the Connecticut pardon. The notice to appear only charges an aggravated felony charge, nothing else. And in 2022, there was a settlement in a case in the Connecticut versus Department of Homeland Security. That's case number 19CV1597, where Connecticut brought a case against DHS because DHS was not respecting its pardons. They've settled the issue. DHS is now going to honor Connecticut pardons since that settlement, which came out after our briefing. I apologize. I haven't had a chance to file a 28J letter. I discovered this over the weekend. But that's another issue in the case. This man is not portable anymore because of the pardon, on top of the fact that he should have been allowed to apply for 212C back in the 90s, but for the agency treating the repeal retroactively in violation of INS versus St. Cyr that came out. Just to make sure that I'm understanding your Kaiser argument, if we conclude that it is that 1003.2A is ambiguous, would you still argue that Zang doesn't satisfy the second and third prongs of the Kaiser toast? Even if it fell within a zone of ambiguity, I would say that the deference is not proper because whether or not a rule is jurisdictional or claims processing rules within the expertise of the But I don't think there is any ambiguity because if you apply the clear statement test, there cannot be any. The government must prove that there is language in this regulation and in the statute allowing for the regulation that gives a delegation to the agency to make such rules to begin with. That's union specific. But also the text of the regulation itself must clearly state that it's jurisdictional. And I think our best case on that would be Beckler versus Commissioner of IRS, Supreme Court from 2022, where they were reviewing a petition for review provision to review certain IRS decisions where it actually used the word jurisdiction in the provision and it was still not enough because it was used in a vague open-ended sense and not directly targeted at the 30-day deadline in that provision. Okay, before I have you sit down, I want to see if my colleagues have any questions for you. No. Um, just to be honest. Okay, there you are. Now we can hear you. Go ahead. Thank you. Okay. Thank you so much. We'll see you. Hear you on rebuttal. May it please the Court. My name is Robert Coleman and I represent the Attorney General. Speak into the mic, please. Sure. Can you hear me better now? Sorry. Raise the mics up. Ah, yes. That should help. Thank you. Okay. Is that better? Yes. Thank you, sir. Thank you very much. Under principles of statutory stare decisis, a stare decisis generally, the, uh, this Court's decision in Zhang, issued in 2010, is controlling in this case and therefore this Court must defer to that decision as the case, the issues raised on appeal here are the very issues that this Court addressed in Zhang. Tell me why Kaiser doesn't cause us to rethink Zhang. In Kaiser, the Court was concerned with instances where courts reflexively defer to agencies, uh, interpretations of regulations. But here in Zhang, the Court did a very thorough job. It analyzed. It didn't say multiple times that if we were on a blank slate, uh, referencing the, the fact that it needed to, uh, defer to Ahmad Nazim in this? Yes. And that's true because it was, of course, prior to Kaiser. So the language was not specifically the same language that, uh, Kaiser references in that decision. But the content of the decision is exactly what Kaiser was trying to encourage courts to do. It was an engagement with the history, with the context, with the purpose of the regulation, a thorough analysis of that. And in doing that. So I guess, I don't think that there was any real quibble with that. I think the quibble is whether or not, if, uh, give it the same conclusion would have been reached giving Ahmad Nazim less deference. So I think my understanding of your burden right now is to explain to us why, um, that shouldn't happen under the standards of Kaiser. So if you could go through the three Kaiser... Sure. So turning to, to the first element of Kaiser that the court look to see whether or not the regulation is truly ambiguous by looking at the history, the purpose, the context and so forth. This court was much of the same, uh, content of the analysis from Zhang would still apply. So for instance, on the history portion, the court was in saying here, this court was thorough and looking back all the way back to the 1950s. So some 70 years at this point and indicating that the board had, throughout that time, had considered or interpreted the removal bar to be jurisdictional and that at no point in time, despite Congress having had many opportunities to weigh in on that issue, had Congress contradicted the board's interpretation of that particular provision. So that is a very strong element in favor of, as the government would indicate, if this court were to look at Kai, at this case, um, at basically by revising Zhang... But what about the statutory tool of requiring there not to be surplusage and being able to harmonize it? What do we do about the at any time language in the statute? Well, the surplusage actually cuts in favor of finding that this is actually an authoritative, uh, restriction on the board or the agency generally's authority here because this court in Luna v. Holder already indicated that this particular language doesn't apply to a statutory filing of a motion to reopen. So if it doesn't apply here to the, in the sua sponte context, then it doesn't apply anywhere. Therefore, it's pure surplus. So that cuts in favor of the government's position. What do we do about the Ninth and Tenth Circuit that have said that it's, uh, not ambiguous? There are other circuits, such as the Fifth Circuit, that think that it is ambiguous. So I think that just points to it being ambiguous. And then you end up with the same resolution that you have in Zhang. So I actually would have thought that that was a powerful argument, so maybe you can help me figure it out. I mean, there, it probably cannot be the fact that somebody disagrees means it's ambiguous. You would agree that that's, I agree with that. So what do we do about the fact that in Kaiser they said you have to use all of the tools of construction? Um, doesn't that cut, or how, how much work does that do in terms of making, uh, avoiding what your colleague on the other side is saying, that we need a clear statement? I, I understand what your Honor's concern is there. I think the issue would be if the sole reason was just, hey, look, the circuits are split on this. That's reason enough to say it's ambiguous. But as I was just saying before about the, the history is a very strong point as well. So there are other factors here. It's not just that the circuits see it differently in and of itself. That's just one additional factor pointing to the fact that it is most likely ambiguous. And therefore, the resolution in Zhang holds. And that's what I was getting at with the beginning by saying that the content of the, of the analysis in Zhang, because it was so thorough, although it was not using the exact language employed in Kaiser because it was issued prior to it, much of that analysis would still hold here. It would just be a, a rearranging of it, perhaps, in, to be in compliance with Kaiser. But that's just a mere, more of a mere formality. So do you think that your best position in terms of, uh, the case coming out the way that you, uh, are advocating for is under Kaiser prong three, or do you think it's one or two? You're, you're kind of smooshing them in the argument that I'm hearing. So if this score is to look at it, at this case, under Kaiser and was essentially not considering Zhang, looking at it anew, and the first step of Kaiser is, is this regulation ambiguous or not? The best read, as we indicated in the brief, the best reading of this regulation is that it is not ambiguous and it simply prohibits the agency from reopening in the context that is implicated by the removal bar. But we're saying that at minimum, it's ambiguous, or at, at worst for the government. It is an ambiguous provision, uh, pointing to much of the analysis from Zhang again. But there are the further elements, as Your Honor was discussing, just, or asking me about just previously, such as what the, uh, whether this provision is within the bailiwick of the agency, say, that's another issue that was brought up in Zhang. Again, not in, in that, uh, exact terminology, because that terminology comes from Kaiser, but. So that's prong three. But that's prong three, and that points as well to this being a provision that prevents the agency from reopening here. The, the purpose of the provision is that the AG is, uh, drawing a line where the board on one side can consider certain claims, but preserving the ability of DHS and the State Department to handle issues arising from people without immigration status from outside the United States. And that's something that the courts should simply not be involved with. If the court has any further questions, I'd be happy to answer those. Do my colleagues on Zoom have questions? No. No. Thank you so much. Thank you.  Under the first prong of the Kaiser test, we have to look to the statutory tools. And, and that's one line of cases we're talking about. But in the Supreme Court's cases regarding whether a rule is non, whether it's jurisdictional or whether it's subject to waiver or forfeiture, in this case DHS forfeited its defense by not making it on time, is a different matter. And to determine that, the, the leading tool is the clear statement test. And it looks to the text of the provision. You cannot look to the history of agency practice or rulemaking and, and find a clear jurisdictional statement in that when the text does not have it. But on top of that, for an agency to even be allowed to create jurisdictional rules, which is very different than being allowed to make rules of procedure, right? For an agency to do that under Union Pacific, there has to be a delegation from Congress saying, agency, you can decide your own jurisdiction. But in fact, that might not even be permissible because you're having the executive determine its own jurisdiction in the, in administrative practice. It's up to Congress to determine what authority an agency has. And with respect to ambiguity, just because a regulation doesn't talk about jurisdiction, doesn't create ambiguity. Silence is not an automatic invitation for ambiguity. And if we look to what the regulation does, it speaks to what the, what the move-in, the person filing the motion to reopen, needs to do. They need to file their motion before they are deported or leave. That's what the regulation does. It speaks to the obligations of the movement, not to the authority of the tribunal. And if we're going to look at agency practice, this was brought up in Zhang. There is case law from the board that suggests that the DHS can file a motion to reopen even though someone has departed. If this was a pure jurisdictional rule that does not distinguish between what motions it applies to, that would not be permissible. Matter of boldness would not be either, that you can move to reopen in an absential order. There's nothing in the regulation that makes that distinction. Now the court, I'm sorry, I've gone over my time. And there was a question your honor asked about the at any time language. That's a different argument and it's much broader than what we're arguing for. I understand what the Ninth and the Tenth Circuit have done, as well as the Fourth, I believe, in the William case from back then. What they're saying is that the departure bar applies to motions to reopen, which would have been under the statute. But the case law has developed that that's not permissible, that the agency was not allowed to do that. And what the Ninth and the Tenth Circuit are saying is that a sua sponte motion to reopen is not a motion to reopen actually, but a request for the court to reopen on its own. We're not making that argument because that is the holding in Zhang that that's not what this was going to allow. But if the court were open to reconsidering that, we would ask it to do so as well. Thank you. Anything else? No, your honor. Thank you. Thank you so much. We will take the matter under advisement.